UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-23694-WILLIAMS/REID

BEACH SIDE APTS, LLC,

    Plaintiff,

v.

NEUE URBAN LLC, *et al.*,

    Defendants.
_____/

## ORDER ON MOTION TO VACATE CLERK'S DEFAULT

This cause is before the Court on Plaintiff/Counter-Defendant, Beach Side Apts, LLC's ("Beach Side") Motion to Vacate the Clerk's Default entered against it on the counterclaim filed by Defendant/Counter-Plaintiff Neue Urban LLC ("Neue Urban"). [ECF No. 57]. The Motion was referred to the Undersigned by the Honorable Kathleen M. Williams to take any appropriate action required by law. [ECF No. 70]. The Court has considered the Motion, Neue Urban's Opposition [ECF No. 59], Beach Side's Reply [ECF No. 62], the parties' supplemental briefs [ECF Nos. 80 and 81], and the evidence presented at the evidentiary hearings that took place before the Honorable Judge Roy K. Altman on October 20, 2023, and before the Undersigned on November 7, 2023. [ECF Nos. 66, 71, 74, 77, 78]. For the reasons addressed below it is **ORDERED** that the Motion is **GRANTED**.

## BACKGROUND

This is an action for breach of contract and breach of fiduciary duty in connection with a contract to purchase commercial property. [ECF No. 50 at 2]. When the sale did not close, Beach Side (seller) sued Neue Urban (buyer) in Florida state court on August 24, 2022, seeking payment

1

of an escrow deposit of $75,000. [ECF No. 1-1 at 2]. Neue Urban then filed a counterclaim for specific performance, breach of contract, and breach of covenant of good faith and fair dealing. [ECF No. 1-6].[1] Beach Side moved to dismiss Neue Urban's counterclaim in state court. [ECF No. 1-7]. Neue Urban filed an amended counterclaim. [ECF No. 1-6].

Although the parties began the litigation in state court, on November 10, 2022, Neue Urban, a New York company, filed a Notice of Removal to federal court. [ECF No. 1]. Plaintiff's case was later dismissed when Plaintiff failed to comply with a district court order and only Defendant's Amended Counterclaim remained pending. [ECF Nos. 33, 35–37]. Neue Urban moved for the Clerk's Entry of Default against Beach Side on the Amended Counterclaim, which was entered on March 23, 2023. [ECF Nos. 38, 39]. Neue Urban thereafter filed its Motion for Default Judgment, and the Undersigned entered an R&R granting that motion, in part, on September 13, 2023. [ECF Nos. 50, 52]. On October 10, 2023 (approximately three weeks later), Beach Side moved to vacate the Clerk's Default. [ECF No. 57].

The instant Motion centers on the competing testimony of two witnesses: Marco Rodriguez (corporate representative of Beach Side) and Attorney Harvey Rogers, Esq. (Beach Side's former attorney). Each witness testified in Court as to their knowledge—or lack thereof—of the status of the federal case and Beach Side's default.

## **LEGAL STANDARD**

According to Rule 55 of the Federal Rules of Civil Procedure, a district court may set aside a clerk's entry of default for "good cause." Fed. R. Civ. P. 55(c). The "good cause" standard is flexible and encompasses a variety of factors depending on the circumstances, including "whether

---

[1] The factual background that gave rise to this case is discussed at length in the Court's Report and Recommendation granting in part Neue Urban's Amended Motion for Default Judgment. [ECF No. 52 at 1–3].

the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). However, these factors are not "talismanic," and courts have utilized other factors such as "whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id*. But "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52 (quoting *Shepard Claims Service, Inc. v. William Darrah & Associates,* 796 F.2d 190, 194–95 (6th Cir.1986)).

Importantly, "'[g]ood cause'" is a liberal standard—more forgiving than the 'excusable neglect' standard for setting aside a default judgment under Rule 60(b)—'but not so elastic as to be devoid of substance.'" *Alonso v. Alonso*, 22-10607, 2023 WL 309588, at *3 (11th Cir. Jan. 19, 2023) (quoting *Compania Interamericana Exp.-Imp., S.A.*, 88 F.3d at 951; *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)).

## DISCUSSION

### I. THE PARTIES' ARGUMENTS

#### A. The Motion, Opposition, And Reply

In summary, Beach Side contends that Attorney Rogers, its former attorney, abandoned his duties in this case by knowingly failing to comply with an order to show cause and by failing to respond to the amended counterclaim filed against his client. [ECF No. 57 at 1–2]. Beach Side alleges that Attorney Rogers did not inform Beach Side's corporate representative, Mr. Rodriguez, of the default until September 26, 2023. [*Id.* at 2]. Attorney Rogers denies the allegation, however,

3

and points to a letter he wrote to Mr. Rodriguez confirming a prior discussion with Mr. Rodriguez in which they had discussed the decision that he stop defending the lawsuit. [*Id.*; ECF No. 78-4].

In its Motion, Beach Side argues that it has established the requisite good cause to set aside an entry of default. [ECF No. 57 at 6]; *Compania Interamericana Exp.-Imp., S.A.*, 88 F.3d at 951. First, it argues that the default was not a product of willful actions but resulted from "Mr. Rogers' abdication and dereliction of his duties as counsel of record for Beach Side." [*Id.* at 6]. Second, Beach Side believes that a delay would not result in the loss of evidence, heightened opportunities for fraud, or discovery issues. [*Id.*]. Third, it argues that it has a meritorious defense, summarizing its dismissed breach of contract claim against Neue Urban. [*Id.* at 6–7; ECF No. 35]. Fourth, the strong policy in favor of resolving cases on the merits, Beach Side believes, warrants setting aside the default. [ECF No. 57 at 7] Fifth, significant harm to Beach Side would result from the default, as Beach Side is "a small company." [*Id.*]. Finally, Beach Side claims it acted promptly, having attempted to contact Attorney Rogers immediately upon finding that a default had been entered. [*Id.*].

Conversely, Neue Urban claims that Beach Side "simply chose to strategically deprive Neue [Urban] and this Court of the property that was subject to this case and ignor[ed] this matter since January of 2023." [ECF No. 59 at 3]. Neue Urban argues that the default was culpable or willful, citing e-mails sent to Attorney Rogers (and thus, his client Beach Side) in February, March, April, August, September, and October regarding objections to the motion for attorneys' fees and objections to the R&R on final default judgment. [ECF No. 59 at 6–7]. Neue Urban did not indicate whether it received responses from Attorney Rogers.

Notably, in support of its argument, Neue Urban states that Beach Side sold the property to another buyer on May 31, 2023, while the property was subject to a *lis pendens* recorded in this

4

action. [*Id.* at 1]. Pursuant to the sale, a Warranty Deed was executed by Mr. Rodriguez as representative of Beach Side and was notarized by Attorney Rogers. [*Id.*]. In effect, Neue Urban contends that Attorney Rogers was communicating with Mr. Rodriguez beyond the date of the filing of the Motion for Final Default Judgment, and therefore was informed of the default and chose not to act. [*Id.* at 2]. Neue Urban maintains it would be prejudiced by the continuation of this case, as there has been a loss of evidence (through the sale of the property) and an increase opportunity for fraud (due to Mr. Rodriguez and Attorney Rogers working together to sell the property while it was subject to this litigation). [*Id.* at 10]. Finally, it argues that the agency relationship between Beach Side and Rogers "imputes the knowledge Rogers had of these proceedings on to Beach Side" and Beach Side does not have a meritorious defense because the claims it filed were dismissed by Judge Altman. [*Id.* at 12; ECF No. 35].

In reply, Beach Side argues it repeatedly asked Attorney Rogers about the status of the case, who in turn reassured Beach Side that "everything was fine." [ECF No. 62 at 2]. As to the e-mails sent to Attorney Rogers cited by Neue Urban in support of its Opposition, Beach Side concludes that they signal misconduct from Beach Side's attorney, not Beach Side itself. [*Id.*]. Beach Side also argues that there is no prejudice to Neue Urban, as the recorded *lis pendens* was never discharged, so Neue Urban can still recover the property if it succeeds on its claim for specific performance. [*Id.* at 3].

### B. Testimony

Prior to entering an Order of Recusal, Judge Altman held an evidentiary hearing at which Mr. Rodriguez testified. [ECF Nos. 66, 71]. At the conclusion of the hearing, the Court stated that it needed to hear from Attorney Rogers before ruling on the Motion. [ECF No. 71 at 38]. The case was later reassigned to Judge Williams, who referred the Motion to the Undersigned. [ECF No.

70]. Soon thereafter, a hearing was held at which Attorney Rogers testified and produced 200 pages of documents responsive to the subpoena *duces tecum* served by Beach Side and Neue Urban. These documents, as well as the arguments provided by the parties in their briefs, shed light on the circumstances surrounding the default.

      i. *Mr. Rodriguez's Testimony and Arguments in Support of Vacating the Default Provided in Beach Side's Supplemental Brief*

Mr. Rodriguez testified that he was not aware of the status of Beach Side's case (including the dismissal of the action and the default), never agreed to pay Neue Urban's attorneys' fees, and never instructed his attorney to ignore the Court's order. [ECF No. 80 at 2; Rodriguez Testimony 21:13–17; 26:11–14; 29:10–21; 34:4–9].

In fact, Attorney Rogers' document production of correspondence between him and Mr. Rodriguez reveal several attempts made by Mr. Rodriguez to contact his attorney regarding the status of the case, for which he maintains he received no response. [ECF No. 80 at 4–7]. On January 17, 2023, Mr. Rodriguez e-mailed Attorney Rogers asking about the "status with Neue and Lustig[,]" Neue Urban's attorney. [ECF No. 80 at 5]. A few days later, Mr. Rodriguez e-mailed Attorney Rogers again asking for the status of the parties' negotiations. [*Id.*]. Then, on March 8, 2023, Mr. Rodriguez e-mailed Attorney Rogers about the potential sale of the property to Neue Urban, stating that they were willing to continue with the purchase at $1.6 million. [*Id.* at 6]. On April 12, 2023, another e-mail was sent to Attorney Rogers asking for an update on the case, expressing confusion as to whether the case was pending in state court or federal court. [*Id.* at 6–7]. A follow up was sent the next day, asking for next steps, "specially the case with the Federal Court please." [*Id.* at 7]. Beach Side thus concludes that Attorney Rogers' testimony is self-serving and is refuted by the documents he himself produced. [*Id.* at 9].

6

> ii. *Attorney Rogers' Testimony and Arguments in Support of Default Provided in Neue Urban's Supplemental Brief*

In contrast, Attorney Rogers—who has represented Mr. Rodriguez for 15 to 20 years—testified that he had several verbal conversations with his client regarding the status of the case, including discussions surrounding the motion for attorneys' fees. [ECF No. 81 at 3–6; Rogers Testimony 27:25–28:8; 41:24–42:4]. According to Attorney Rogers, he recommended (at the request of his client) that Beach Side default, electing to give up the deposit and pay attorneys' fees to Neue Urban after receiving a more lucrative offer from another buyer for the purchase of the property. [ECF No. 81 at 4, 6; Rogers Testimony 29:23–24; 50:13–15].

Neue Urban argues that Beach Side should not be able to rely on e-mails Mr. Rodriguez chose not to include in the Motion because they are "non-sensical and not subject to cross-examination." [ECF No. 81 at 9]. It argues that the Court's reliance on these e-mails "will be fundamentally unfair to Neue [Urban] and results in the denial of due process rights from Neue to challenge those e-mails." [*Id.* at 9].

Along with the arguments above, the status of the *lis pendens* is a subject of controversy. Beach Side argues that if Attorney Rogers is to be believed, he allowed a *lis pendens* to remain recorded against his client's property, frustrating his client's ability to sell the property. [ECF No. 80 at 2]. Conversely, Attorney Rogers stated that the *lis pendens* was no longer active, and Neue Urban's election to proceed on the $75,000 judgment rather than specific performance made the *lis pendens* a non-issue for the parties. [Rogers Testimony 26:25–27:7].

## II.   VACATING THE CLERK'S DEFAULT IS JUSTIFIED

As stated on the record, the two witnesses presented conflicting testimony. On the one hand, Attorney Rogers testified, under oath, that he followed his client's instruction to voluntarily

7

default in this case. Mr. Rodriguez, on the other hand, testified that he expected his attorney to litigate the case.

### A. Good Cause

As an initial matter, the "good cause" standard under Rule 55(c) is a liberal one. *Alonso*, 2023 WL 309588, at *3. It encompasses a variety of factors, including whether the default was culpable or willful; whether the adversary would be prejudiced by setting the default aside; and whether the defaulting party presents a meritorious defense. *See Compania Interamericana Exp.-Imp., S.A.*, 88 F.3d 948, 951 (11th Cir. 1996). Additional factors that courts may consider include whether the defaulting party acted promptly to remedy the default; whether there is a significant financial loss to the defaulting party, and whether the public interest is implicated. [*Id.*].

#### i. *Whether Default was Culpable or Willful*

First, "[A] 'party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings.'" *S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011) (quoting *Compania Interamericana*, 88 F.3d at 951). The evidence points to the conclusion that Mr. Rodriguez did not act willfully in defaulting.

Mr. Rodriguez reached out to his attorney via e-mail in January, March, and April asking for an update on the case. *See Discussion §I(B)(i)*. Attorney Rogers testified that he had several verbal conversations with Mr. Rodriguez in February, March, and April regarding the plan to default. [Rogers Testimony 27:19–24]. Indeed, Mr. Rodriguez partially confirmed this testimony, stating that he was in contact with Attorney Rogers through the end of May. [Rodriguez Testimony 24:24–25:1]. These alleged discussions surrounding the default, however, were never memorialized until the September 26, 2023 letter. Further, while the sale of the property on May 31, 2023 (which involved both Mr. Rodriguez and Attorney Rogers per the Warranty Deed) shows

8

that the two were in communication at that time, it says nothing about their communications surrounding the default.

Attorney Rogers explained that he did not memorialize these conversations because Mr. Rodriguez had been his client for 20 years, and verbal communications were commonplace between the two. [*Id.* at 28:2–8]. But despite this customary practice, Attorney Rogers produced numerous e-mails in response to Mr. Rodriguez regarding this case and other matters, none discussing the default or the counterclaim. [*See e.g.*, ECF No. 80-1 at 114, 153, 158, 165]. Further, contrary to Attorney Rogers' testimony that he may have been in possession of handwritten notes containing details regarding discussions surrounding the Motion for Default Judgment and Motion for Attorneys' Fees, no handwritten notes were produced. [Rogers Testimony 47:15–18; 70:24–71:4].

For whatever, reason, Attorney Rogers decided to memorialize ***for the first time*** the agreement to default on September 26, 2023—more than five months after the alleged discussion had taken place and almost six months after Neue Urban's Motion for Clerk's Entry of Default. [*See* Letter at ECF No. 78-4]. Neither party produced a single correspondence or note confirming Beach Side's plan to default before Attorney Rogers' September 26 letter.

Neue Urban argues that Attorney Rogers' knowledge about the default should automatically be imputed on Beach Side. [ECF No. 81 at 2]. Of course, counsel's negligence may be imputed to a client in certain circumstances, but courts are often "swayed by the plight of a diligent client who is deprived of a remedy by counsel's mistake" and "may tip the balance toward granting relief when the default is caused by the attorney. . .." § 2693 Judicial Discretion in Setting Aside a Default, 10A Fed. Prac. & Proc. Civ. § 2693 (4th ed.).

9

To be sure, circuit courts are split on this narrow issue. Neue Urban cites to *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) for the proposition that "where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." But at least one circuit court has held in the contrary. In *Jackson v. Beech*, 636 F.2d 831, 837 (D.C. Cir. 1980), the circuit court explained that the lower court erred in imputing the conduct of the attorney on the client in considering the motion to set aside the default judgment, stating that "[d]efault judgments were not designed as a means of disciplining the bar at the expense of the litigants' day in court." In *Jackson*, the defendants' conduct was not willful, as they "did not even know of the default or of their lawyer's negligence." [*Id*].

Neue Urban does not cite to Eleventh Circuit precedent directly on this issue. However, in *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130 (11th Cir. 1986), the court hinted that "courts are chary of dismissing actions on account of attorney inadvertence in non-abusive situations," citing the D.C. Circuit's holding in *Jackson*. *See Clark v. Newcity,* 2:10-CV-360-WKW, 2010 WL 3908596, at *3 (M.D. Ala. Sept. 30, 2010) ("Given that the default was the result of no mistake of Defendant, the court declines to punish this innocent Defendant."). These cases further support the conclusion that the clerk's default must be vacated.

Next, Neue Urban cites to *In re Arrow Air, Inc.*, 10-28831-BKC-AJC, 2012 WL 314192, at *2 (Bankr. S.D. Fla. Feb. 1, 2012) where the bankruptcy court held that the defaulting party "voluntary chose to hire its former counsel, . . . the conduct of that counsel is imputed to [the defaulting party], and [t]he Court will not relieve [it] of the default based on . . . current counsel's conclusory assertion that [the defaulting party's] prior counsel allowed a default to be entered." Indeed, the Eleventh Circuit has held that "where procedural safeguards are missing, a defendant

10

does not have a 'good reason' for failing to respond to a complaint." *Sloss Industries Corp. v. Eurisol,* 488 F.3d 922, 935 (11th Cir.2007). As such, this circuit has "extended this principle to situations where a defendant, knowing that an action has been filed against him, fails to act diligently in ensuring that his attorney is adequately protecting his interests." [*Id.*].

However, there are certain distinguishing features that lead the Court to a different conclusion in this action. In *In re Arrow Air, Inc.*, the defaulted party failed to submit an affidavit or other sworn testimony from its representative explaining why its former counsel "allegedly allowed the default to be entered." 2012 WL 314192, at *2. It also proffered "no evidence of any diligence on its part to ensure that its formal counsel was protecting its interest." *Id.* at *3. Conversely, Beach Side provided sworn testimony from its representative evidencing his repeated attempts to contact his company's attorney regarding the status of the case. Further, unlike *Sloss Industries Corp.*, where the court analyzed a default judgment under the less forgiving Rule 60(b)(1) standard, the instant action is not one where "procedural safeguards" were not met (such as a postal error or an internal miscommunication) or one where the client failed to check with its attorney to ensure that the case was moving forward. 488 F.3d at 935–36. In sum, Beach Side demonstrated diligence.

Certainly, this is not a case where the defaulted party "did nothing to ensure that [its attorney] did what it promised[,]" that is, to defend his client. *Dunn v. Prudential Ins. Co. of Am.*, 8:10-CV-1626-T-24TGW, 2011 WL 1298156, at *3 (M.D. Fla. Apr. 4, 2011). While Mr. Rodriguez should have made efforts to search the court docket for updates, that should not overshadow his numerous attempts at contacting his attorney regarding the status of the case. And the case law weighs in favor of allowing the case to proceed on the merits where the defaulting party's inaction was not willful. *See Rodriguez v. Brim's Food, Inc.*, 13-CV-20600, 2013 WL

11

3147348, at *2 (S.D. Fla. June 19, 2013) (vacating the clerks' entry of default and holding that "even though Defendant may be culpable for the delay that resulted in the clerk's default entry, there is no evidence that they acted willfully."); *You Fit, Inc. v. Pleasonton Fitness, LLC,* No. 8:12–cv–1917–JDW–EAJ (M.D. Fla. Apr. 17, 2013) (granting Motion to Set Aside Default even though defendants were solely culpable for delay that resulted in clerk's entry of default).

        ii.  *Whether the Adversary Would be Prejudiced by Setting the Default Aside*

Second, the Court fails to see how setting aside the default would prejudice Neue Urban. Neue Urban argues that it cannot continue to litigate the case because the property was sold. But it fails to articulate how its ability to litigate each of its other claims has been impaired due to "loss of evidence, unavailability of witnesses, increased difficulties with discovery, or greater opportunity for fraud and collusion of some sort." *Regal Nails, Salon & Spa, LLC v. Ha*, 20-14388-CIV, 2021 WL 4976529, at *4 (S.D. Fla. Sept. 9, 2021), *report and recommendation adopted sub nom. Regal Nails, Salon & Spa, LLC v. Ha*, 20-14388-CIV, 2021 WL 4348243 (S.D. Fla. Sept. 24, 2021). Indeed, Neue Urban specifically *elected* the remedy of damages in its Motion for Default Judgment because "the market value of the Property at the time the judgment will be entered is lower than at the time the Real Estate Contract was executed, and recovery of the deposit is inconsistent with the remedy of specific performance." [ECF No. 50 at 24]. Curiously, it now uses its specific performance claim to attempt to maintain the clerk's default, arguing that it would be more costly to litigate the case now that the property has been sold. [Rodriguez Testimony 10:13–16]. Even if this were true, the case can, at a minimum, continue on the breach of contract and breach of covenant of good faith and fair dealing claims. As a final note on this issue, whether the previously discussed *lis pendens* has any effect on this action relates solely to the claim for specific performance, is contested by both parties, and is otherwise outside the scope of this Order.

    iii. *Whether a Meritorious Defense was Established*

  Third, Beach Side argues that it established a meritorious defense: the entitlement of the deposit that resulted from Neue Urban's breach of the sale agreement. [ECF No. 62 at 2]. The burden to show the existence of a meritorious defense in setting aside an entry of default (as opposed to setting aside a default judgment) is "extremely light." *Regal Nails, Salon & Spa, LLC*, 2021 WL 4976529, at *4. "A party seeking to set aside an entry of default . . . need only show a 'hint of a suggestion of a meritorious defense.'" *Id.* (quoting *U.S. Bank N.A. as Tr. for RMAC Tr., Series 2016-CTT v. Son Van Doung*, 1:18-CV-3594-LMM-JSA, 2019 WL 9048962, at *7 (N.D. Ga. Oct. 23, 2019); *Retina-X Studios, LLC v. ADVAA, LLC*, 303 F.R.D. 642, 657 (M.D. Fla. 2014)). Beach Side argues that Neue Urban failed to cancel the contract prior to the due diligence period of May 20, 2022. [ECF No. 57 at 6]. As such, its defense is that Neue Urban breached the purchase and sales agreement. [ECF No. 62 at 4]. The threshold for setting aside a default under Rule 55(c) is low, and Beach Side has presented at least a "hint of a suggestion of a meritorious defense." *Regal Nails, Salon & Spa, LLC*, 2021 WL 4976529, at *4.

    iv. *Other Factors and Considerations*

  Additional factors weigh in favor of vacating the clerk's default. First, Beach Side acted promptly to correct the default. *Compania Interamericana Exp.-Imp., S.A.*, 88 F.3d at 951. Upon receipt of the September 26, 2023 letter, Mr. Rodriguez e-mailed Attorney Rogers the following day, stating that he "never agreed" to Attorney Rogers' failure to defend the counterclaim and "never agreed" to pay Neue Urban's fees. [ECF No. 80-1 at 101]. The Motion to Vacate was filed 14 days later. [ECF No. 57]. Thus, when Plaintiff learned of the default, it moved to vacate the clerk's entry of default expeditiously.

Finally, Neue Urban argues that the Court should not rely on e-mails not introduced into evidence or discussion in the briefing. [ECF No. 81 at 9]. Reliance on these e-mails, it believes, will be "fundamentally unfair to Neue and results in the denial of due process rights from Neue to challenge those emails." [*Id.*]. Undoubtedly, "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950). But Neue Urban fails to specify which e-mails it is referring to. Either way, the parties did not request an additional hearing after receiving and reviewing the documents produced by Attorney Rogers. They had ample opportunities to challenge the veracity of both witnesses through two evidentiary hearings and an extended briefing schedule. No further inquiry is needed.

To be sure, there is a strong public policy in favor of determining cases on their merits. *Florida Physicians Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (*citing Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1510 (11th Cir. 1984)). "The Court is vested with considerable discretion in ruling on a motion to set aside an entry of default." *Rodriguez*, 2013 WL 3147348, at *2 (quoting *In re Fortner,* No. 12–60478, 2012 WL 3613879, at *7 (S.D. Fla. Aug.21, 2012)) (citing *Robinson v. U.S.,* 734 F.2d 735, 739 (11th Cir. 1984)). Proceeding with a default judgment is a "drastic remedy which should be used only in extreme situations." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002) (*quoting Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). This is not one of those cases.

## **CONCLUSION**

For the foregoing reasons it is **ORDERED** that Beach Side Apts, LLC's Motion to Vacate the Clerk's Default entered against it [ECF No. 57] is **GRANTED**.

**SIGNED** this 6th day of February, 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Kathleen M. Williams**; and

**All Counsel of Record**